IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUSTIN SCOTT DAWSON,
Plaintiff,
v.

UNITED AIRLINES, INC., a Delaware corporation,

Defendant.

Case No.: 24-cv-3008

**JURY DEMANDED ON ALL COUNTS**

## COMPLAINT

Plaintiff, Justin Scott Dawson (hereinafter "Dawson" or "Plaintiff"), by his undersigned counsel, complains for monetary damages against Defendant, United Airlines, Inc. (hereinafter "United"), as follows:

### Statement of Jurisdiction and Venue

1. This Court has jurisdiction over this case matter pursuant to 28 U.S.C. 1332 based on diversity of citizenship of the parties and the amount in controversy. Plaintiff, Justin Dawson, is an individual who resides in the state of Arizona, and, throughout all relevant times, never resided in Illinois. Defendant, United Airlines, Inc., is a limited liability company incorporated in the state of Delaware. United's principal place of business is located at 233 South Wacker Driver Chicago, Illinois 60606. The amount in controversy exceeds the sum of seventy-five thousand dollars ($75,000), exclusive of interests and costs.

2. Venue is proper in this case because the defendant resides in the State of Illinois.

### Factual Allegations

1. Dawson, Employee No. 399776, had been a First Officer on the Airbus based in Houston, TX (IAH).
2. Dawson was hired on November 29, 2022.
3. Dawson was interviewed by United prior to being hired.

4. Dawson successfully and satisfactorily completed training on March 12, 2023.
5. Dawson has a Special Issuance Authorization Medical Certificate ("SI") from the Federal Aviation Administration ("FAA") issued in January of 2022.
6. Dawson's SI mandates participation in the Human Intervention Motivational Study ("HIMS Program").
7. United Pilots who are mandated by the FAA to participate in the HIMS Program are also mandated by United to attend monthly monitoring meetings.
8. However, Dawson had not been required to or schedule to attend a meeting on or any time before March 16, 2023.
9. These aforementioned monthly meetings occur where the pilot is based.
10. United Pilots are not required to live in the city where they are based. United Pilots are not required to live in the state where they are based. United Pilots are not required to in in the country where they are based. United Pilots are not required to be near their base on their days off.
11. There was a monthly monitoring meeting scheduled for March 16, 2023 in Houston, Texas.
12. Dawson was scheduled for a day off on March 16, 2023.
13. On March 16, 2023 Dawson's schedule reflected that he was scheduled for a day off on March 16, 2023. As such, Dawson was not required to be in Houston, TX on March 16, 2023.
14. On March 16, 2023, Mr. Dawson received a text at 8:14 a.m. from Lyndsey Harrison, Regional EAP Manager, stating, in part, "Hey! You know how to get to get to the meeting today?"
15. This text in paragraph 17 is in reference to United's monthly monitoring meeting scheduled for March 16, 2023.
16. This text in paragraph 17 was the first time United notified Dawson that there was a monthly monitoring meeting.
17. This text in paragraph 17 was the first time United asked Dawson to attend a monthly monitoring meeting during Dawson's tenure at United.
18. This monthly monitoring meeting for March 16, 2023 was not on Dawson's schedule on March 16, 2023.

19. Dawson did not attend this monthly monitoring meeting on March 16, 2023.
20. On March 21, 2023, Ernie Aller, an agent of United Airlines, notified Dawson that he was required to attend a meeting to review Dawson's nonattendance of this monthly monitoring meeting for March 16, 2023.
21. On March 23, 2023, Dawson attended a meeting with Ernie Aller, Lyndsey Harrison, Gordon Johnson, and a company representative from United Human Resources.
22. At the beginning of this meeting on March 23, 2023, Dawson's schedule still did not display the monthly monitoring meeting scheduled for March 16, 2023.
23. During this meeting on March 23, 2023, Ernie Aller, as witnessed by Dawson and Gordon Johnson, altered Dawson's schedule to show the monthly monitoring meeting scheduled for March 16, 2023.
24. Ernie Aller committed the allegation in paragraph 21 with the intent of creating grounds for termination of Mr. Dawson and with the intent of tarnishing Dawson's employment record so that Dawson would no longer be employable as a pilot at a major air carrier.
25. On April 18, 2023, Ernie Aller notified Dawson via letter that Mr. Dawson was terminated. Ernie Aller terminated Dawson with the intent of tarnishing Dawson's employment record so that Dawson would no longer be employable as a pilot at a major air carrier.
26. On April 18, 2023, Ernie Aller wrote a letter addressed to Dawson. In this letter, Ernie Aller wrote that Dawson was "intentionally misleading and dishonest... [and his] judgement and integrity over the short tenure of [his] employment [was] unacceptable." These statements are false.
27. Subsequent to his termination, United published the letter written by its agent, Ernie Aller, to the Pilot Records Database (hereinafter "PRD") for view by all air carriers. Specifically, this letter was viewed by Mesa Airlines.
28. Further, United published to the PRD that Dawson had been "Terminated - [for] pilot performance." This statement is false. Dawson's termination from United had nothing to do with pilot performance. This statement was published by United to Mesa Airlines.
29. After his termination on April 18, 2023, Dawson applied to each major air carrier. On his application, Dawson was required to list that he had been terminated from United because major air carriers require strict continuity between pilot applications and the PRD.

Therefore, United forced Dawson to publish United's statement of "terminated" to other air carriers, such as Frontier Airlines, Southwest, Airlines and Mesa Airlines.

30. As a result of United's publication of its false statement, Ernie Aller's defamatory letter and fraudulent modification of Dawson's schedule, Dawson has not been able to get a job with any major air carrier.

## Count I: Defamation

31. Plaintiff incorporates paragraphs 1-30 of this complaint.
32. When United published that Dawson had been "Terminated - Pilot Performance" in the PRD, United made a false statement concerning Dawson. Dawson's termination was not a result of pilot performance.
33. When United published that Dawson had been "Terminated - Pilot Performance" in the PRD, it made an unprivileged communication to third-party air carriers, such as Mesa Airlines.
34. United's publication harmed Dawson because Dawson is unable to get a job at a major air carrier when he is otherwise qualified, as evidenced by United hiring Dawson.
35. Separate and in addition to the forgoing claim of defamation: United fraudulently fabricated grounds for termination of Dawson.
36. As such, the use of the phrases "Terminated" or "Employer Initiated Separation – violation of rules" or other similar phrases *vis-à-vis* Dawson's employment with United are false.
37. A pilot's application is expected to match what is listed in the PRD. Pilots have job offers rescinded or terminated if their application differs from what is listed in the PRD. United published "Terminated - Pilot Performance" and Ernie Aller's April 18, 2023 letter to the PRD. As such, Dawson was forced to list "terminated" under United Airlines for all of is applications to other major air carriers, such as Frontier Airlines and Southwest Airlines, which acts a publication by United.
38. "Terminated" on Dawson's application harmed Dawson's future employment opportunities as an air line pilot at a major air carrier. Because of the nature of major airline employment in that it is unionized and has a low to zero rate of termination not related to pilot performance, a pilot who is terminated by a major air carrier is unlikely to

gain employment with other major air carriers. United has knowledge of this practice because United hires few pilots, if any, who have been terminated from a major air carrier.

## Count II: Defamation *Per Se*

39. Plaintiff incorporates allegations in paragraphs 1-30 of this complaint.
40. Plaintiff incorporates allegations of paragraph 31-38 of this complaint.
41. Further, United's statements falsely and wrongfully impute that Dawson lacks the ability and is unable to carry out his profession.
42. United's statement also prejudices Dawson in his profession because he is unable to attain employment as a professional pilot at a major air carrier, a job for which he is otherwise qualified. As such, Dawson is harmed by United's statement.
43. Lastly, United's publication of these false statements into the PRD forces Dawson to republish these statements in his applications to air carriers. Even Dawson listing "terminated" under his listing under United on his applications imputes that Dawsons lacks the ability and is unable to carry out his profession. Because of the nature of major airline employment in that it is unionized and has a low to zero rate of termination not related to pilot performance, a pilot who is terminated by a major air carrier is unlikely to gain employment with other major air carriers. United has knowledge of this practice because United hires few pilots, if any, who have been terminated from a major air carrier.

## Count III: Tortious Interference with Future Employment

44. Count III incorporates paragraphs 1-28 of this Complaint.
45. Dawson is a highly qualified airline pilot, and is qualified to work at a major air carrier. This is evidenced by United hiring Dawson.
46. As such, Dawson can reasonably expect to enter into valid business relationships with major air carriers by acting as an air line pilot.
47. United had knowledge of Dawson's reasonable expectation to work at a major air carrier because Dawson is a qualified airline pilot. And qualified air line pilots work at major air carriers, not as conductors for railroads, for example.

48. Because of the nature of major airline employment in that it is unionized and has a low to zero rate of termination not related to pilot performance, a pilot who is terminated by a major air carrier is unlikely to gain employment with other major air carriers. United has knowledge of this practice because United hires few pilots, if any, who have been terminated from a major air carrier.

49. United, by and through its agent, Ernie Aller, fraudulently and tortiously tarnished Dawson's employment record by fabricating a reason to terminate Dawson through the back-dating and modification of Dawson's schedule.

50. This fabricated ground of termination by United has irreparably interfered with and harmed Dawson's future employment opportunities as an airline pilot at a major air carrier because no major air carrier will hire Dawson.

51. Separately and in addition to the preceding claim of tortious interface, United further fraudulently and tortiously interfered with and with and harmed Dawson's future employment opportunities as an airline pilot at a major air carrier by publishing in the PRD "Termination - Pilot Performance" and Ernie Aller's April 18, 2023 letter. These are false statements.

52. A pilot's application is expected to match what is listed in the PRD. Pilots have job offers rescinded or terminated if their application differs from what is listed in the PRD. United published "Terminated - Pilot Performance" and Ernie Aller's April 18, 2023 letter to the PRD. As such, Dawson was forced by United to list "terminated" under United Airlines for all of is applications to other major air carriers even though Dawson's termination was a result of fraudulent conduct by United.

53. "Terminated" on Dawson's application harmed Dawson's future employment opportunities as an air line pilot at a major air carrier because no major air carrier will hire Dawson.

54. United committed the acts alleged in paragraphs 45-53 with the intention of preventing the plaintiff from obtaining future gainful employment with a major air carrier.

## Count IV: False Light

55. Count IV incorporates paragraphs 1-28 of this complaint.

56. Ernie Aller's fraudulent modification of Dawson's schedule to fabricate grounds for Dawson's termination and subsequent letter placed Dawson in a false light before the public.

57. As a result of Ernie Aller's actions, Dawson must now publicly state to prospective employers, such as Frontier Airlines and Southwest Airlines, that he was terminated for pilot performance or terminated for a violation of rules. This is a false light of dishonestly and professional incompetence, which is highly offensive to a reasonable person.

58. Ernie Aller, as demonstrate by his fraudulent modification of Dawson's schedule, acted with knowledge or reckless disregard that the basis for termination or violation of rules and the statements he made in his April 18, 2023 letter were false.

59. Separate and in addition to the forgoing claim of false light, United's publication of Ernie Aller's April 18, 2023 letter to the PRD and labeling of Dawson's employment as "Terminated - Pilot Performance" in the PRD placed Dawson in a false light before the public.

60. United published Ernie Aller's letter to the PRD and labeled Dawson's employment as "Terminated - Pilot Performance" with knowledge or reckless disregard that the basis for termination for pilot performance or violation of rules and the statements made in Ernie Aller's April 18, 2023 letter were false.

61. As a result of United's actions, Dawson must now publicly state to prospective employers that he was terminated for pilot performance or terminate for a violation of rules. This is a false light of dishonestly and professional incompetence, which is highly offensive to a reasonable person.

## Demand for Relief

WHEREFORE, Plaintiff prays for judgment by jury trial against the Defendant for acts, errors, or omissions, their principals, employees, staff, or agents, directly or indirectly causing injury to Plaintiff as will be proven at trial and such other damages and compensation for loss as are provided for in law or equity and including but not limited to general, special, pecuniary, or exemplary damages as may be deemed fair and just as follows

1. Plaintiff demands that Defendant pay compensatory and punitive damages for the diminished value of Plaintiff's career as an air line pilot at a major air carrier as a result of Defendant's tortious, reckless, fraudulent, and intentional conduct in the amount of $2,287,170 in compensatory damages and $6,861,510 in punitive damages.
2. Plaintiff further demands the Defendant pay damages for the humiliation, embarrassment, damage to reputation, and emotional distress cause by Defendant's tortious, reckless, fraudulent, and intentional conduct in an amount to be determined.

Respectfully Submitted on this 15th day of April, 2024.

_____
Jackson B. Barnett
Barnett Law Offices, LLC
Lake In the Hills Airport (3CK)
8411 Pyott Road Suite 100
Lake In the Hills, IL 60156
(815) 356-8647
Attorney for Plaintiff